IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ISARIO I. MEJIA, | § | |
| (TDCJ-CID #464377) | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-04-1456 |
| | § | |
| S. RICH, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

Isario I. Mejia, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division, filed this suit in April 2004, alleging civil rights violations resulting from the denial of medical care, denial of due process, and improper placement in administrative segregation. Mejia, proceeding *pro se* and *in forma pauperis*, sues the following prison officials at the Estelle Unit of TDCJ: S. Rich, the Assistant Warden; H. O'Hara, a disciplinary captain; T. Pickett, a disciplinary captain; M. Campbell, a correctional officer; and J. Bonds, a nurse manager. Mejia also sues the Bureau of Classification. The threshold issue is whether Mejia has presented claims that have a sufficient basis to proceed. Based on a careful review of the pleadings, the record, and the applicable law, this court dismisses Mejia's claims, for the reasons stated below.

## I.     Background

Mejia suffers from an esophageal stricture, a narrowing of the esophagus due to acid reflux, and has a history of gastritis and stomach ulcers.  He vomits daily and often vomits blood.  Doctors at the Estelle Unit and John Sealy Hospital diagnosed and treated his condition and prescribed Zantac.

In November 2003, Mejia told Nurse Bonds that he had forced himself to vomit because he felt as if he was choking on something.  Mejia wanted to be examined by a physician. Mejia alleges that Nurse Bonds told the medical staff that Mejia was "acting" and that there was nothing wrong with him.  Mejia alleges that the nurses at the Estelle Unit had grown tired of his repeated visits to the infirmary.  On the morning of December 5, 2003, Mejia was throwing up blood and was taken to the infirmary.  He alleges that when he arrived, Nurse Bonds said, "If I had known it was Mejia, I would have told them to leave him where he was," and that Mejia made himself throw up.  When Nurse Bonds brought Mejia a container, he pushed it away and said that he needed treatment, not smart comments.  Nurse Bonds called for security because Mejia was being aggressive.  Mejia alleges that he was placed in prehearing detention and deprived of medical help.

After Mejia was escorted to prehearing detention, he continued to throw up blood. When Officer Campbell opened the food slot of the cell, Mejia asked him to call for medical help.  As Officer Campbell moved to the next cell, she stated, "I am serving chow. I'm not calling anyone for you."  A support service inmate placed a food tray in the food slot of Mejia's cell door.   Mejia again asked Officer Campbell for help and she said, "I'm not

calling anyone for you. Eat your d--n food before it gets thrown away." Mejia pushed the food tray off the cell door with his leg to try to get some attention. Mejia alleges that he was dizzy and weak and afraid that he would pass out. Mejia continued to ask for help as Officer Campbell passed by Mejia's cell. Mejia alleges that Campbell told him to shut up and get away from the cell door. Nearly an hour later, Officer Campbell returned, and Mejia again told her that he needed help. Mejia asked for sheets, a blanket, and toilet paper. Officer Campbell told Mejia that she would not get anything for him. Mejia alleges that his clothes were covered in blood and he had no supplies to use to clean himself. Mejia alleges that when he complained, Officer Campbell retaliated against him by turning off the water to his cell.

Mejia was charged, in disciplinary case 20040105388, with assaulting Nurse Bonds by raising his arm and knocking a pan out of her hands. Mejia received notice of the charges on December 9, 2003. At the disciplinary hearing on December 10, 2003, Nurse Bonds testified that Mejia swung his arm at her but struck the container instead. Mejia was convicted on the assault charge. Mejia alleges that Captain Pickett was biased and did not listen to what Mejia had to say. Mejia's punishment consisted of a reduction in good-time earning class status from State Approved Trusty 3 to Line 1; commissary restriction for 30 days; cell restriction for 30 days; and loss of 15 days good-time credit.

Mejia was charged, in disciplinary case 20040105396, with assaulting Officer Campbell by throwing a food tray at her. Mejia received notice of the charges on December 14, 2003. At the hearing on December 19, 2003, Officer Campbell testified that Mejia had

thrown a food tray at her. Officer Campbell denied that the food tray hit her, but she said some food struck her knee. Mejia was not allowed to call an eyewitness because the testimony would have been repetitious. The witness submitted a written statement. Captain O'Hara found Mejia guilty of the charge. Mejia's punishment consisted of commissary restriction for 30 days; cell restriction for 30 days; placement in solitary confinement for 15 days; and a loss of 365 days of good-time credit. On December 22, 2003, Assistant Warden Rich reassigned Mejia from minimum custody to administrative segregation.

On July 20, 2004, Mejia was taken to the hospital emergency room after he threw up blood. He was hospitalized until July 29, 2004. Diagnostic procedures revealed a hiatus hernia on the esophagus and ulcers in the stomach. Mejia was prescribed Omeprazol and Maalox. Mejia alleges that when he returned to the Estelle Unit, he did not receive the medications prescribed at the hospital. Instead, he received Ranitidine, Promethazine, Omeprazol, and Simethicone.

Mejia seeks an injunction requiring the defendants to release him from administrative segregation. Mejia asks that the disciplinary convictions be expunged from his record. Mejia seeks the restoration of all rights and privileges and 380 days of good-time credit. He seeks $100 for each day he was incorrectly placed in a lower custody level; $100 per day assessed against Captain O'Hara and Captain Pickett for the punishments they imposed; $100 per day assessed against Officer Campbell for her false testimony; and $100 per day assessed against Nurse Bonds for failure to provide medical care.

The allegations Mejia raises are examined in light of the applicable law.

## II.     The Standard of Review

Under 28 U.S.C. § 1915A, federal courts are authorized to review, before docketing, if feasible, or in any event as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. The court must dismiss any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A governs this suit by a prisoner against a prison official. In *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998), the Fifth Circuit held that Section 1915A applies even when a prisoner has paid the required filing fee.

A complaint is frivolous if it lacks an arguable basis in law or fact. *See Denton v. Hernandez,* 504 U.S. 25, 31 (1992); *Richardson v. Spurlock,* 260 F.3d 495, 498 (5th Cir. 2001) (citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997)). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998) (quoting *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997)).

## III.    The Claims Based on the Denial of Adequate Medical Care

"[I]nadequate medical care by a prison doctor can result in a constitutional violation for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to [the prisoner's] serious medical needs, constitut[ing] the unnecessary and wanton infliction of

pain proscribed by the Eighth Amendment." *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999) (quoting *Estelle v. Gamble,* 429 U.S. 97 (1976)).  Under the "deliberate indifference" standard, a prison official is not liable for the denial of medical treatment "unless the official knows of and disregards an excessive risk to inmate health or safety." *Stewart*, 174 F.3d at 534 (citing *Estelle*, 429 U.S. at 104).  While malpractice and negligent treatment do not rise to the level of a constitutional tort, *see Mendoza v. Lynaugh,* 989 F.2d 191, 195 (5th Cir. 1993), a claim of "unnecessary and wanton infliction of pain repugnant to the conscience of mankind," can state a claim of a constitutional tort.  *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997) (citing *Estelle,* 429 U.S. at 105-106).

> In *Estelle,* the Supreme Court explained:
>
>> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment.  This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle,* 429 U.S. at 104-05.  To state an Eighth Amendment claim, a plaintiff must allege a deprivation of medical care sufficiently serious to show that "the state has abdicated a constitutionally-required responsibility to attend to his medical needs," *Bienvenu v. Beauregard Parish Police Jury,* 705 F.2d 1457, 1460 (5th Cir. 1983), and that a prison official knew of and disregarded "an excessive risk to inmate health or safety." *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837

(1994)).  "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998) (quoting *Farmer*, 511 U.S. at 837).  "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk."  *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994) (citing *Farmer,* 511 U.S. at 842 & n.8).

Deliberate indifference is an extremely high standard to meet.  A plaintiff must show that prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Johnson,* 759 F.2d at 1238.  Whether to provide additional or different medical treatment "is a classic example of a matter for medical judgment."  *Estelle,* 429 U.S. at 107.  The "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference.  *Farmer,* 511 U.S. at 838.

Mejia alleges that he made repeated visits to the prison infirmary and was sent to the hospital on several occasions for diagnostic tests and treatment.  When he was diagnosed with stomach ulcers and related problems, he was prescribed medications.  He continued to make frequent visits to the infirmary.  This evidence of examinations and treatment is inconsistent with a claim of deliberate indifference.  *Bass v. Sullivan*, 550 F.2d 229 (5th Cir. 1977).

Mejia also complains that TDCJ-CID medical personnel did not give him the correct medications for his gastrointestinal problems. Mejia's complaints make it clear that he did receive medications after his hospitalization. "Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimizana,* 122 F.3d 286, 292 (5th Cir. 1997). To establish an Eighth Amendment claim for denial of medical care, the inmate must show deliberate indifference to "serious" medical needs, "[b]ecause society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Constitutionally adequate care does not, however, ensure that an inmate will agree with every treatment decision. *Estelle*, 429 U.S. at 107-08. Mejia has not alleged facts demonstrating that the defendants were aware of, and disregarded, a substantial risk of harm to Mejia in deciding what medications to give him and when he should be seen by physicians, rather than nurses.

In a related claim, Mejia complains that Officer Campbell refused to obtain medical assistance for him even though he told her that he was weak after throwing up blood. To allege that Officer Campbell acted with deliberate indifference, Mejia must allege facts that would show that Officer Campbell had information from which the inference could be drawn that a substantial risk of serious harm existed, and that Officer Campbell drew the inference. *Smith v. Brenoettsy*, 158 F.3d 908, 912 (5th Cir. 1998). Mejia does not allege facts showing that Officer Campbell knew information from which a substantial risk of harm could be inferred, or that she made the inference. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994) (citing *Farmer,* 511 U.S. at 842 & n.8). Mejia's pleadings show that when he requested

medical attention, Officer Campbell was serving lunch to inmates. Mejia threw up daily and often vomited blood; this was a routine occurrence.

Mejia argues that Officer Campbell could see that Mejia was sick and should have secured medical assistance to treat him. The "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer,* 511 U.S. at 838.

### IV.    The Due Process Claims Based on the Disciplinary Convictions

Mejia alleges that when he was convicted of the two disciplinary charges in December 2003, his due process rights were violated because the hearing officers were biased and because the charging officers gave false testimony. Mejia's punishment for both cases included a loss of good-time credits. A prisoner cannot bring a section 1983 action seeking damages (rather than the recovery of good-time credits) for a conviction until that conviction has been reversed on direct appeal, expunged by executive order, or otherwise declared invalid in a state collateral proceeding or by the issuance of a federal writ of habeas corpus, if a favorable judgment would "necessarily imply" the invalidity of the prisoner's conviction or affect the length of his confinement. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). A "conviction," for the purpose of *Heck,* includes a ruling in a prison disciplinary proceeding that results in a change to a prisoner's sentence, including the loss of good-time credits. *See Edwards v. Balisok,* 520 U.S. 641, 644, 646 (1997). "The 'conviction' in the prison disciplinary sense is the finding of guilt or the disciplinary charge, and if success of the plaintiff's section 1983 claim necessarily would imply the invalidity of that finding, then

*Heck* bars the claim until such time as its requirements are satisfied." *Clarke v. Stalder,* 154 F.3d 186, 189 (5th Cir. 1998), *cert. denied,* 525 U.S. 1151 (1999) (quoting *Stone-Bey v. Barnes,* 120 F.3d 718, 721 (7th Cir. 1997)).  Claims for damages and declaratory[1] relief challenging the procedures used in prison disciplinary proceedings cannot be raised in a section 1983 action until the finding of guilt on the disciplinary charge has been reversed, expunged, or otherwise declared invalid, if a favorable judgment would "necessarily imply" the invalidity of the result of the disciplinary proceeding or the length of the prisoner's confinement.  *Edwards*, 520 U.S. at 646.

In this case, Mejia asks this court to find that the procedures used in the disciplinary proceedings violated his due process rights and award him damages as a result.  The relief Mejia seeks would "necessarily imply" the invalidity of the findings of guilt in the disciplinary proceedings and would change the length of his confinement.  Mejia has not alleged that the disciplinary convictions have been reversed, expunged, or otherwise declared invalid.  (Docket Entry No. 8, Plaintiff's More Definite Statement, p. 11).  Mejia's due process claims arising from the disciplinary hearings in 20040105388 and 20040105396 are barred by *Heck* and *Edwards.*

Mejia also seeks the restoration of good-time credits.  A challenge to a disciplinary conviction that resulted in the loss of good-time credits is a challenge to the duration of the prisoner's sentence and must be pursued in a habeas corpus proceeding.  *Preiser v.*

---

[1] In *Edwards*, 520 U.S. at 648, the Supreme Court extended *Heck* to a request for declaratory relief under § 1983.

*Rodriguez*, 411 U.S. 475, 487 (1973) (writ of habeas corpus is the sole remedy when a state prisoner challenges fact or duration of sentence).

## V.     The Claim Based on Improper Placement in Administrative Segregation

Mejia complains that he was improperly placed in administrative segregation. Mejia states that on December 22, 2003, Assistant Warden Rich reassigned Mejia from minimum custody to administrative segregation. As a general rule, inmates do not have a protected liberty interest in their custodial classification. *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992). The Fifth Circuit has stated that the classification of inmates is typically relegated to the broad discretion of prison officials and is a matter with which the courts are reluctant to interfere except in extreme circumstances. *Mikeska v. Collins*, 900 F.2d 833, 836 (5th Cir. 1990), modified on rehearing, 928 F.2d 126 (5th Cir. 1991).

Construed liberally, Mejia argues the defendants were deliberately indifferent to his personal safety when they placed him in administrative segregation. The Supreme Court has specifically addressed the issue of deliberate indifference to an inmate's safety in prison. The Court explained that:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference . . . .

> But an official's failure to alleviate a significant risk which he should have perceived, but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994). The state of mind of the prison officials is a relevant factor in the inquiry. *Horton v. Cockrell*, 70 F.3d 397, 401 (5th Cir. 1995).

In this case, Mejia was charged with a disciplinary violation for assaulting officers on December 5, 2003. In disciplinary case 20040105388, Mejia was charged with assaulting Nurse Bonds by raising his arm and knocking a pan out of her hands. Mejia was convicted of the offense on December 10, 2003. Mejia was charged, in disciplinary case 20040105396, with assaulting Officer Campbell by throwing a food tray at her. Mejia was found guilty of this offense at the hearing on December 19, 2003.

Mejia has wholly failed to show that his placement in administrative segregation was the result of deliberate indifference to his safety, rather than a response to the disciplinary convictions for assaulting two officers on December 5, 2003.

The Fifth Circuit has held that "segregation, without more, simply does not constitute a deprivation of a constitutionally cognizable liberty interest." *Pichardo v. Kinker,* 73 F.3d 612, 613 (5th Cir. 1996) (citing *Luken v. Scott,* 71 F.3d 192, 193 (5th Cir. 1995), *cert. denied,* 116 S. Ct. 1690 (1996)). Rather, this is part of the "ordinary incidents of prison life." *Pichardo,* 73 F.3d at 613, citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Inmates have no protected liberty interest in a particular custodial classification. *See Wilkerson v. Stalder*, 329 F.3d 431, 435-36 (5th Cir.), *cert. denied*, 540 U.S. 966 (2003). Indeed, "absent exigent

circumstances, administrative segregation as such, being an incident to the ordinary life of a prisoner, will never be a ground for a constitutional claim because it simply does not constitute a deprivation of a constitutionally cognizable liberty interest." *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (quotation omitted). Because Mejia relies on a legally nonexistent interest, any alleged due process or other constitutional violation arising from his classification is without merit. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999).

**VI.   Conclusion**

The action filed by Isario I. Mejia (TDCJ-CID Inmate #464377) lacks an arguable basis in law. His claims are DISMISSED with prejudice under 28 U.S.C. § 1915A(b)(1). Any remaining pending motions are DENIED as moot.

The TDCJ-CID must continue to deduct twenty percent of each deposit made to Mejia's inmate trust account and forward payments to the court on a regular basis, provided the account exceeds $10.00, until the filing fee obligation of $150.00 is paid in full.

The Clerk is directed to provide a copy to the parties; the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; and Clerk of Court, United States District Court for the Eastern District of Texas, 211 West Ferguson, Tyler, Texas 75702, attention: Betty Parker.

SIGNED on October 21, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge